151 S.W.3d 284 (2004)
In the Interest of J.C., G.C., I.C., and T.C., Children.
No. 06-04-00060-CV.
Court of Appeals of Texas, Texarkana.
Submitted September 30, 2004.
Decided December 7, 2004.
*286 Kathryn B. Moon, Bennett Law Office, Longview, for appellant.
Joe Shumate, Law Office of Joe Shumate, Henderson, for appellee.
Carl H. Barber, Law Office of Carl H. Barber, Henderson, for the children.
Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION
Opinion by Chief Justice MORRISS.
"Criminally abusive behavior" describes, but mostly sanitizes, actions taken by Stephen Paul Clark against his wife, Kimberly Clark, as graphically detailed in the evidence at the heart of this case. Stephen's parental rights to his four children, J.C., *287 G.C., I.C., and T.C., were terminated by the trial court on Kimberly's petition, and Stephen, on appeal, challenges the factual sufficiency of the evidence to support the jury's findings. We affirm the termination of Stephen's parental rights because we find the evidence factually sufficient to support the findings (1) that at least one  in fact, both  of the grounds alleged for termination existed, including (a) Stephen's endangering conduct under Texas Family Code Section 161.001(1)(E) and (b) Stephen's knowing criminal conduct resulting in his conviction and confinement and resulting inability to care for the children for at least two years under Section 161.001(1)(Q); and (2) that termination of Stephen's parental rights was in the children's best interests.
Some factual background assists in understanding this matter. Stephen and Kimberly were married on or about August 11, 1996, and ceased to live together as husband and wife on or about March 28, 2001. Kimberly and Stephen had four children together: J.C., G.C., I.C., and T.C. At the time of the jury trial on the petition for involuntary termination, the children whose interests were at stake were as follows: son, J.C., age 9; son, G.C., age 7; son, I.C., age 6; and daughter, T.C., age 4.[1]
On March 27, 2002, Kimberly filed an original petition for divorce, termination of parental rights, request for permanent injunction, renewal of protective order, and request to consolidate cases. On August 21, 2002, after a bench trial, the trial court granted the divorce, terminated Stephen's parental rights as to J.C., G.C., I.C., and T.C., and granted a permanent injunction. That result was reversed by this Court because Stephen had been denied a jury trial. See In re J.C., 108 S.W.3d 914 (Tex.App.-Texarkana 2003, pet. ref'd). On remand, a jury trial was held beginning February 9, 2004, and as a result Stephen's parental rights to the four children were terminated by order signed March 11, 2004. In its order, the trial court found, based on the jury findings, that, by clear and convincing evidence, Stephen had (1) "engaged in conduct ... that endangers the physical or emotional well-being of the children"; and (2) "knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date the petition was filed." In addition, the trial court found that, by clear and convincing evidence, "termination of the parent-child relationship between STEPHEN CLARK and the children the subject of this suit is in the best interest of the children."

1. The Evidence Is Factually Sufficient To Support the Findings That at Least One of the Grounds Alleged for Termination Existed
Stephen challenges the factual sufficiency of the evidence to support the termination of his parental rights to the four children at issue. The trial court's termination of Stephen's parental rights set out its findings, based on the jury verdict, supporting two statutory grounds for termination, (a) his conduct endangering the children and (b) his criminal confinement causing his inability to care for the children for at least two years.
Any complaint that the evidence is legally or factually insufficient to support the findings necessary for termination is analyzed by a heightened standard of appellate review. See In re C.H., 89 S.W.3d 17, 25 (Tex.2002). The Texas Supreme Court has now held that the appellate *288 standard for reviewing the factual findings made to support termination proceedings is whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the allegations made in support of the claimed termination. This is the language used by the court to explain the working of the "clear-and-convincing evidence" standard of review. The court also disapproved of cases holding that termination findings should be upheld if they are not against the great weight and preponderance of the evidence. Id. at 23.
If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not have credited in favor of the finding is so significant that a trier of fact could not reasonably have formed a firm belief or conviction to support termination, then the evidence is factually insufficient. Id. at 25. Accordingly, Stephen must show that the evidence is so weak, or that the evidence to the contrary is so overwhelming, that the trier of fact could not have reasonably found it sufficient to support the termination. In re B.S.W., 87 S.W.3d 766, 772 (Tex.App.-Texarkana 2002, pet. denied). This he has failed to do.

a. The Evidence Is Factually Sufficient To Support the Finding That Stephen Engaged in Endangering Conduct Under Section 161.001(1)(E)
Section 161.001(1)(E) of the Texas Family Code focuses exclusively on the parent's conduct. Under this section, proof that the parent's course of conduct endangered the child's physical or emotional well-being is sufficient. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987); In re S.F., 141 S.W.3d 774, 776 (Tex.App.-Texarkana 2004, no pet.); see Tex. Fam.Code Ann. § 161.001(1)(E) (Vernon 2002). "Endanger" means to expose to loss or injury; to jeopardize. See Boyd, 727 S.W.2d at 533.
Here, there was evidence of direct physical abuse of at least one of the children by Stephen. In August 2001, Stephen pled guilty to injury to a child, for an offense committed March 4, 2000, when, according to Kimberly, he punched J.C. in the midsection while at a drive-in restaurant in Henderson and, in the process, broke J.C.'s hand. Kimberly also testified that, on or about November 27, 1998, Stephen beat the then three-year-old J.C. with a belt. That beating left bruises on J.C. from his head to his toes, including his buttocks. Child Protective Services investigated that incident and concluded J.C. had been abused by Stephen. Hence, in January 1999, Stephen was indicted for an injury to a child, but Kimberly filed an affidavit of nonprosecution on that charge.
It is not necessary that the conduct be directed at the child or that the child actually suffer injury. Id. The violent acts and behavior directed at one child and at the child's mother in the presence of the other children satisfy the requirement of Section 161.001(1)(E). Ziegler v. Tarrant County Child Welfare Unit, 680 S.W.2d 674 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.). The child endangerment which would satisfy Section 161.001(1)(E) can be inferred from parental misconduct without a showing of any "actual and concrete threat of injury to the child's emotional and physical well-being." Boyd, 727 S.W.2d at 533. If the evidence shows a course of conduct which has the effect of endangering the child's physical or emotional well-being, then a finding under former Section 15.02(1)(E), now Section 161.001(1)(E), is supportable. Id. at 534.
Stephen previously pled guilty to two counts of sexually assaulting Kimberly and to one count of injury to J.C. The pattern of abuse which was first reported in 1998 *289 continued until 2001, the time of Stephen's final arrest. Stephen continued thereafter to verbally abuse Kimberly from his prison cell by way of letters and cards.
Additionally, the caselaw interpreting Section 161.001(1)(E) has allowed for termination of the parent-child relationship for violent or negligent conduct directed at the other parent or other children, even where the behavior was not committed in the child's presence. Dir. of Dallas County Child Protective Servs. Unit of Tex. Dep't of Human Servs. v. Bowling, 833 S.W.2d 730, 733 (Tex.App.-Dallas 1992, no writ). Therefore, even though the sexual assaults on the mother may not have been in the direct presence of the children,[2] the caselaw allows for termination of the parent-child relationship. Moreover, the fact that G.C. and T.C. had not yet been born at the time of the 1998 assault on J.C. does not negate the fact that the pattern of abuse existed. The continuing course of abusive conduct by Stephen is evidence that the four children's emotional and physical well-being has been endangered.

b. The Evidence Is Factually Sufficient To Support the Finding That Stephen Engaged in Knowing Criminal Conduct Resulting in His Conviction and Confinement and His Resulting Inability To Care for the Children for at Least Two Years Under Section 161.001(1)(Q)
The evidence clearly shows Stephen is currently incarcerated on a ten-year sentence for two sexual assault convictions and one conviction for injury to a child. Stephen challenges the trial court's finding that there is factually sufficient evidence that he knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition. Tex. Fam.Code Ann. § 161.001(1)(Q) (Vernon 2002). Stephen contends that, even if the statute is applied prospectively, Kimberly failed to prove Stephen's inability to care for his children for at least two years from the date of the petition.
Subsection Q is to be read prospectively. In re A.V., 113 S.W.3d 355, 360 (Tex.2003). A prospective reading of subsection Q allows the State to act in anticipation of a sentenced parent's abandonment of the child and not just in response to it. Id. The purpose of subsection Q is to look to future imprisonment and inability to care for the child in order to protect the children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin. Id. at 360-61.
The petition to terminate Stephen's parental rights was filed March 27, 2002, after the convictions became final August 9, 2001. Therefore, the State had to prove that Stephen would be incarcerated until March 27, 2004. The State submitted the final convictions, for which Stephen was sentenced to ten years. Moreover, there is nothing to show Stephen is not still incarcerated during this appeal, more than two years after the petition was filed. Therefore, reading subsection Q prospectively, Stephen's parental rights were properly terminated.

2. The Evidence Is Factually Sufficient To Support the Finding That Termination of Stephen's Parental Rights Was in the Children's Best Interests
Under Section 161.001, the trier of fact must find that termination is in *290 the best interest of the child. See Tex. Fam.Code Ann. § 161.001(2) (Vernon 2002). There is a strong presumption that the best interest of the child is served by keeping custody in the natural parent. See In re D.M., 58 S.W.3d 801, 814 (Tex.App.-Fort Worth 2001, no pet.). The parents' rights, however, are not absolute; protection of the child is paramount. A.V., 113 S.W.3d at 361.
In Holley v. Adams, the Texas Supreme Court set out a nonexclusive list of factors to help determine the best interest of the child: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the stability of the home or proposed placement; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371-72 (Tex.1976). Best interest, however, need not be proven by any unique set of factors, nor is proof limited to any specific factor. See In re H.R., 87 S.W.3d 691, 700 (Tex.App.-San Antonio 2002, no pet.). We briefly examine some of the factors.

a. Desires of the Children
Carl Barber, the children's attorney ad litem, testified that the children said Stephen was not a real father to them. The children indicated that, while Stephen was at home, the house was "just chaos with yelling, screaming, violence and was an unhappy place," but now that Stephen is not there, "home is a happy place."
Barber testified that, when he interviewed six-year-old G.C., regarding why G.C. purposely called Stephen "Father" and not "Dad," he responded that, "Dads are somebody that takes care of you and does things with you and Father is just your father." Moreover, the children responded "no" when questioned as to whether they miss their father. Barber testified that the children were not interested in continuing a relationship with Stephen.

b. Emotional and Physical Needs of the Children
Stephen stands convicted of an injury to a child. Also, the pictures of the beaten J.C. show dark and large bruises over much of his body, including his buttocks. Kimberly testified the children have learned Stephen's violent behavior and are violent toward one another. Even though the children did not testify during the termination proceeding, it is clear from Barber's testimony the children perceive the home to be happy without Stephen. A happy home is important to the emotional and physical needs of the children and for the well- being of the children in general.
Further, there is evidence in the record of medical neglect of a child when, on March 4, 2000, after breaking J.C.'s hand by punching him, Stephen failed to take him to the hospital as soon as possible. The family instead traveled in the family van to another city, Tyler, from Henderson, before taking J.C. for medical care, because Stephen was concerned that his history of abuse in Henderson would cause him trouble if they got medical care for J.C. there.

c. Stephen's Parental Ability and Programs Available
In 1995, Stephen entered anger management classes. In 1998, however, Stephen beat J.C. with a belt. Thereafter, Stephen again entered counseling and started medication for depression and bi-polar disorder *291 in 1999. Again in 2001, Stephen physically abused Kimberly and J.C., for which he pled guilty.
After being incarcerated, Stephen took mandatory abuse prevention treatment classes. He has not taken any parenting classes. Stephen offered the jury many excuses for his behavior, from accident to losing his temper. The blame-shifting illustrates Stephen's failure to own up to his actions and inactions. Ultimately, blame-shifting would inhibit improvement or growth within the family.

d. Stability of Proposed Placement
The four children will be living with their mother, Kimberly. The placement is stable, and the children will be residing with one parent. As Barber testified, the children are happy at home now that Stephen is absent. There is no evidence either Kimberly or the person she is dating has ever abused the children. "The rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." A.V., 113 S.W.3d at 361. Therefore, the jury findings supporting placement of the children with Kimberly and termination of Stephen's parental rights are supported by the evidence.

e. Emotional and Physical Danger to the Children
The evidence of Stephen's heedless and repeated sexual abuse of Kimberly with the children present in the house, at times within their hearing  added to the evidence of his past actions of physical abuse of the children  amply demonstrate the danger posed to the children by Stephen and support the jury findings.
Based on Stephen's actions, his inactions, his history of physical and mental abuse, and his failure to take responsibility or to remedy past problems, we conclude that the evidence was factually sufficient to support the jury's determination that termination was in the best interests of the children. Even though Stephen testified he has completed certain abuse treatment programs, we conclude that the evidence is factually sufficient to support the trial court's finding that termination was in the best interests of the children.
We overrule the factual insufficiency contentions and affirm the trial court's judgment.
NOTES
[1] Stephen has two other children from earlier relationships: two sons, K.M. and B.C.
[2] The evidence shows that, at least once, one of the children was in the same room where sexual assault occurred and that, at least once, the sounds accompanying Stephen's sexual assaults on Kimberly reached the children just down the hall, causing considerable emotional trauma.