

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00132-CV

## IN THE INTEREST OF S.N., A CHILD

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2007-952-3**

# OPINION

The trial court terminated the parent-child relationship between S.N. and her parents following a bench trial. The parents argue that the evidence is legally and factually insufficient to support two of the predicate grounds for termination found by the court or the court's finding that termination is in the best interest of S.N. We will affirm.

**Predicate Grounds**

The decree recites affirmative findings on four predicate grounds for termination: (1) knowingly placing or allowing the child to remain in dangerous conditions or surroundings; (2) engaging in conduct or knowingly placing the child

with persons who engaged in conduct which endangered the child; (3) constructively abandoning the child; and (4) failing to comply with the provisions of a court order establishing the actions necessary for the return of the child. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (N), (O) (Vernon Supp. 2008).

S.N.'s mother "Nancy"[1] contends in her first two issues that the evidence is factually insufficient to prove a predicate ground for termination under subsection (D) or under subsection (E). "Charles" raises the same complaints in his sole issue but also contends that the evidence is legally insufficient to prove either of these grounds for termination.

The court found four predicate grounds for termination. Nancy and Charles challenge only two of those findings. A parental-rights termination decree must be based on a finding of at least one predicate ground and a finding that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2008). If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights. *In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied). Therefore, to mount a successful challenge on appeal based on evidentiary insufficiency, a party must challenge each affirmative finding of a predicate ground for termination or at minimum challenge the best interest finding.

---

[1] To protect the identity of the child who is the subject of this suit, we shall refer hereinafter to the mother by the pseudonym "Nancy" and to the father by the pseudonym "Charles." *See* TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2002); TEX. R. APP. P. 9.8(b)(1).

Here, because Nancy and Charles challenge only two of the court's four findings on predicate grounds for termination, we need not address their complaints regarding the sufficiency of the evidence to support the predicate grounds for termination.

### Best Interest

Nancy and Charles contend that there is legally and factually insufficient evidence to support the court's finding that termination of the parent-child relationship is in the best interest of the child.

The applicable standards of review for parental-rights termination cases are settled.

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *T.N.F.*, 205 S.W.3d at 630.

In conducting a factual sufficiency review, "a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record,

the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*J.F.C.*, 96 S.W.3d at 266 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (footnotes omitted); *T.N.F.*, 205 S.W.3d at 630.

The primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar *Holley* factors, which include:

(1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *T.N.F.*, 205 S.W.3d at 632.

These factors are not exhaustive and need not all be proved as a condition precedent to termination. *C.H.*, 89 S.W.3d at 27; *T.N.F.*, 205 S.W.3d at 632.

The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child. Other cases, however, will present more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice to uphold the jury's finding that termination is required.

*C.H.*, 89 S.W.3d at 27; *accord T.N.F.*, 205 S.W.3d at 633.

For cases in which the Department or another government agency is the petitioner, section 263.307(a) of the Family Code provides that "the prompt and

permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2002). Subsection (b) then lists thirteen factors to consider in determining whether a parent is "willing and able to provide the child with a safe environment." *Id.* § 263.307(b) (Vernon 2002). We will likewise give consideration to these factors to the extent applicable. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *T.N.F.*, 205 S.W.3d at 633 & n.3. We will address the best-interest finding separately for each parent.

### Nancy

Nancy contends in her third issue that the evidence is factually insufficient to support the finding that termination of her parental rights is in S.N.'s best interest.

*Desires of the Child:* S.N. was sixteen months' old at the time of trial. Her attorney ad litem contends that S.N.'s actions are indicative of her desires. For example, counsel suggests that, because S.N. cried "uncontrollably" during Nancy's first visit (when S.N. was six months' old), this is evidence that she does not desire to have a permanent relationship with her mother. Counsel also suggests that, because S.N. refers to her foster parents[2] as "mommy" and "daddy," this is evidence that she prefers them over her biological parents.

We disagree with the ad litem's contention. Evidence that a parent is unable to console her infant child may be relevant to other of the *Holley* factors, such as the emotional and physical needs of the child and the parental abilities of the parent, but it is doubtful that such evidence is indicative of the infant's conscious, volitional desire to

---

[2] S.N.'s foster parents are her great-uncle and great-aunt.

maintain a parent-child relationship or to permanently sever that relationship. It is likewise doubtful that evidence an infant or toddler refers to her foster parents as "mommy" and "daddy" is probative on this issue.

> It has long been established in a custody proceeding, that the preference of the child as to its managing conservator, although not controlling, may be weighed along with other evidence in making that decision. However, it is equally well-established that before such testimony may be received, the child must be of a sufficiently mature age to judge for itself.

*In re Marriage of D.M.B.*, 798 S.W.2d 399, 402 (Tex. App.—Amarillo 1990, no writ); *see In re A.R.*, 236 S.W.3d 460, 480 (Tex. App.—Dallas 2007, no pet.) (court need not consider child's wishes in termination proceeding absent evidence that "child was sufficiently mature to express a parental preference"); *Tiller v. Villasenor*, 426 S.W.2d 257, 258 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ) (child's preference may be considered in custody dispute if child is "of sufficiently mature age"); *Dunn v. Jackson*, 231 S.W. 351, 353 (Tex. Comm'n App. 1921, holding approved) ("The wishes of a child whose custody is in controversy may, if it be of a sufficiently mature age to judge for itself, be consulted and weighed with other testimony in determining the issue."); *see also* TEX. FAM. CODE ANN. §§ 153.008, 153.009 (Vernon Supp. 2008).[3] *Contra In re D.J.*, 100 S.W.3d 658, 667 (Tex. App.—Dallas 2003, pet. denied) (referring to evidence child "cried 'very hard' or

---

[3] Section 153.008 of the Family Code permits a child 12 or older to make a written statement indicating which person he prefers to have the exclusive right to designate his primary residence. TEX. FAM. CODE ANN. § 153.008 (Vernon Supp. 2008). Section 153.009 similarly provides that a trial court shall on request interview a child 12 or older regarding the child's wishes as to conservatorship or designation of primary residence and may interview a younger child regarding these matters. *Id.* § 153.009 (Vernon Supp. 2008).

screamed when held by Father and Father was unable to console [him]" as relevant to this issue while acknowledging child was "too young to verbally express his desires").

Thus, we hold that evidence of an infant's or toddler's conduct and statements like those of S.N. is not relevant to the issue of whether the child desires termination of the parent-child relationship. *See A.R.*, 236 S.W.3d at 480; *D.M.B.*, 798 S.W.2d at 402; *Tiller*, 426 S.W.2d at 258; *Dunn*, 231 S.W. at 353. Instead, we agree with Nancy that there is no evidence in the record relevant to this factor.

*Child's Emotional and Physical Needs:* CPS Supervisor Jesse Guardiola testified that a child S.N.'s age requires "constant supervision and care" to meet her physical needs and requires parents who are available "24/7" to meet her emotional needs. In the report from Nancy's last counseling session, the counselor concluded, "[Nancy] is not presently capable of providing a safe and nurturing environment for [S.N.]." He states in his consultation report, "[Nancy] has not made any behavioral changes due to her alcohol abuse. She requires substance abuse counseling in order to confront this issue." Guardiola testified that a parent who abuses alcohol is not capable of providing for the emotional needs of a young child like S.N.

Nancy counters that there is no evidence that she failed to provide for S.N.'s physical and emotional needs before removal or that S.N. has any special needs which require abilities Nancy does not have or could not acquire. The CPS caseworker involved with the family at the beginning of CPS's involvement testified that S.N. had thrush at his initial visit. When Nancy told him they were new to the area and did not have a primary care physician, he made an appointment for them. Nancy took S.N. to

the doctor and treated her in accordance with the doctor's instructions. The caseworker testified that Nancy had appropriately addressed S.N.'s medical needs. The caseworker ultimately determined that S.N. should be removed from the home because Nancy and Charles declined to submit to a parenting assessment and admittedly used illegal narcotics in their home.

Therefore, the record contains conflicting evidence regarding whether Nancy is capable of providing for S.N.'s physical and emotional needs.

*Emotional and Physical Danger to Child:* Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. *See, e.g., Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *In re S.E.W.*, 168 S.W.3d 875, 882 (Tex. App.—Dallas 2005, no pet.); *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 819-20 (Tex. App.—Eastland 2004, no pet.); *In re U.P.*, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). While such evidence is generally considered in evaluating the predicate grounds for termination, it is also relevant in determining whether a parent poses a present or future risk of physical or emotional danger to the child. *See, e.g., Doe v. Brazoria County Child Protective Servs.*, 226 S.W.3d 563, 574 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *In re K.C.*, 219 S.W.3d 924, 928-29 (Tex. App.—Dallas 2007, no pet.); *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.).

We have already described the counselor's observations regarding Nancy's substance abuse. Other witnesses testified that Nancy abused drugs and alcohol during the months leading up to trial. She also tested positive for methamphetamine on one occasion and admitted to a CPS investigator on a prior occasion that she would have tested positive for cocaine and marihuana if she had been tested.

Nancy denied using any illegal drugs within the past three years and denied that she has a drinking problem. She refers to statements of counsel at trial, including the ad litem, conceding a lack of evidence to support an affirmative finding under predicate ground (P) that Nancy used a controlled substance in a manner that endangered S.N. and failed to complete a court-ordered substance-abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(1)(P) (Vernon Supp. 2008). From the record, it appears that the parties and the court agreed that no affirmative finding should be made on this predicate ground because there was no evidence Nancy used a controlled substance in S.N.'s presence and because she was never ordered to participate in a substance-abuse treatment program.

Thus, despite the lack of evidence that Nancy used a controlled substance in S.N.'s presence, we hold that the evidence of her continuing drug and alcohol abuse supports a finding that she poses a present and future risk of physical or emotional danger to the child and that termination would be in the best interest of S.N. *See Doe*, 226 S.W.3d at 574; *K.C.*, 219 S.W.3d at 928-29; *S.B.*, 207 S.W.3d at 887.

*Parental Abilities:* The evidence that Nancy was unable to console S.N. over a 45-minute period during the first visit is some evidence that she lacks parental abilities.

Her counselor's records indicate that she "completed parent training" but notes concerns about her lack of plans for the future and continuing substance abuse. Nevertheless, the evidence of the home environment and S.N.'s condition during CPS's initial involvement suggest that Nancy's parenting was adequate to care for S.N.'s basic needs. Therefore, the record contains conflicting evidence regarding whether Nancy has adequate parental abilities.

*Available Programs:* Nancy refers to evidence that she participated in and successfully completed several programs made available to her. The record contains no evidence that similar programs would not be available in the future. Thus, the evidence relevant to this factor does not support the best-interest finding.

*Plans for Child:* According to the counselor's report, Nancy has "presented no plan for her or [S.N.'s] future and did not appear motivated to do so." Guardiola testified that CPS's plans are for S.N.'s foster parents to adopt her. Nancy presented no evidence regarding her future plans for herself or S.N. Therefore, the evidence relevant to this factor supports the best-interest finding.

*Stability of Home:* Guardiola testified that the foster parents are providing "a stable, loving home" for S.N. The foster mother testified that her husband and she had provided for all of S.N.'s physical needs and described in particular her visits with a pediatrician to appropriately deal with S.N.'s medical needs. Nancy herself testified that the foster parents have provided S.N. a stable home. Conversely, Nancy has not been able to maintain a stable home and specifically testified that she does not have "a

safe place" for S.N. to live. She concedes that the evidence relevant to this factor supports the best-interest finding.

*Nancy's Acts and Omissions:* The evidence regarding Nancy's continuing substance abuse and her failure to maintain a stable home also constitute evidence of acts and omissions which support the best-interest finding. She has also failed to maintain employment, testifying that she had two jobs at different points during CPS's involvement but was fired from both of them. She has been unemployed during most of the 11-month period between removal and the trial. Despite provisions for regular visitation, Nancy visited with S.N. only twice after removal. She conceded at trial that S.N. "doesn't really know who [Nancy] is." Thus, Nancy's continuing substance abuse, her failure to maintain a stable home, and her failure to take advantage of visitation and develop a closer relationship with S.N. all support the best-interest finding.

*Excuses for Nancy's Acts and Omissions:* Nancy testified that she was fired from her two jobs "because of CPS." After CPS took custody of S.N., Nancy returned to her hometown in west Texas, which limited her ability to have regular visitation. She explained that she didn't move closer to S.N. because she doesn't know "anybody in Waco," which is where she lived at the time of removal. She stated that she failed to obtain medical care for S.N. before removal because of a lack of transportation and because she "[d]idn't know a doctor here in town" (although she "was looking for one"). Therefore, if the court accepted Nancy's testimony as credible, it would tend to contradict the best-interest finding.

*Statutory Factors:* Evidence regarding five of the thirteen statutory factors listed in section 263.307(b) support the best-interest finding: (a) S.N.'s age and physical and mental vulnerabilities; (b) the counselor's evaluation of Nancy's readiness for parenting; (c) Nancy's substance abuse; (d) Nancy's lack of motivation to improve her situation; and (e) the lack of an adequate social support system for Nancy. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (8), (11), (13). Four of the statutory factors do not apply. *Id.* § 263.307(b)(2), (5), (7), (9).[4] The evidence regarding two of the statutory factors is conflicting, so we consider these factors to be neutral: (a) Nancy's willingness "to seek out, accept, and complete counseling services" and cooperate with CPS; and (b) Nancy's demonstration of adequate parenting skills. *Id.* § 263.307(b)(10), (12). And the evidence regarding two of the statutory factors tends to contradict the best-interest finding: (a) "the magnitude, frequency, and circumstances of the harm to the child"; and (b) "whether the child has been the victim of repeated harm after the initial report and intervention by the department." *Id.* § 263.307(b)(3), (4).

*Summary:* Our evaluation of whether the evidence supports a best-interest finding does not involve a precise mathematical calculation despite the listing of relevant factors. *See C.H.*, 89 S.W.3d at 27; *T.N.F.*, 205 S.W.3d at 632. Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that termination of Nancy's parental rights

---

[4] The factors which we deem inapplicable are: (a) frequency and nature of out-of-home placements; (b) whether S.N. is fearful of returning to Nancy's home; (c) whether there is a history of abusive conduct in the home; and (d) whether the perpetrator of harm to S.N. has been identified. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (5), (7), (9) (Vernon 2002).

is in the best interest of S.N. *See T.N.F.*, 205 S.W.3d at 634. Therefore, we overrule Nancy's third issue.

## Charles

Charles contends as part of his sole issue that there is legally and factually insufficient evidence to support the best-interest finding.

*Desires of the Child:* We have already determined that there is no evidence in the record relevant to this factor.

*Child's Emotional and Physical Needs:* Guardiola testified about S.N.'s need for "constant supervision and care" and opined that persons engaged in substance abuse cannot meet this need. Guardiola testified in particular that Charles is not capable of providing for S.N.'s needs. The record contains evidence that Charles used illegal narcotics at the time of removal, though he denies it. He later pleaded guilty to possession of cocaine and is presently on community supervision for that offense. He testified that he has talked to S.N. only once since her removal and that his job "is a 24-hour call" which effectively prevents him from providing for S.N.'s needs because he's never home.[5] He conceded that he does not presently "have a safe place for [S.N.] to live." Thus, the evidence relevant to this factor supports the best-interest finding.

*Emotional and Physical Danger to Child:* This factor focuses on present and future danger to the child. *See Holley*, 544 S.W.2d at 372; *T.N.F.*, 205 S.W.3d at 633. While the record contains evidence of past narcotics usage, there is no evidence that Charles has

---

[5] Charles testified that he worked 107 hours the week before trial. His employment as a pipe inspector requires him to travel throughout Texas and New Mexico.

continued to use illegal drugs since removal. This is further corroborated by the fact that he has successfully remained on community supervision despite provisions for regular drug testing as a condition of community supervision. Therefore, the evidence relevant to this factor tends to contradict the best-interest finding.

*Parental Abilities:* Guardiola testified that Charles has not demonstrated any parental abilities. Charles argues that, though the evidence indicates that he "needs more training in parenting skills," there is no evidence that "he lacks the ability to learn those skills." However, the record reflects that Charles did not take advantage of parenting classes recommended from the beginning of CPS's involvement. A trial on the merits is not the time for a parent facing termination of his parental rights to express for the first time an interest in learning appropriate parenting skills. The evidence regarding Charles's lack of parenting skills and his failure to take advantage of the parenting classes offered supports the best-interest finding.

*Available Programs:* We have already addressed the evidence that Charles failed to take advantage of the programs made available to him. Thus, the evidence relevant to this factor supports the best-interest finding.

*Plans for Child and Stability of Home:* Charles testified that he is not ready to take custody of S.N., that he does not have a safe place for her to live, and that he would like for her to live with his mother. Guardiola testified that CPS's plans are for S.N.'s foster parents to adopt her and that they have been providing her a safe, stable home. Therefore, the evidence relevant to these factors supports the best-interest finding.

*Charles's Acts or Omissions and Excuses for Them:* Charles conceded that he has had virtually no contact with S.N. since her removal and he has provided no financial support for her despite having a good-paying job. He has failed to take advantage of parenting classes and other services made available to him to regain custody of S.N., and he was admittedly not ready to take custody of her at the time of trial. Charles's excuses for these omissions are: (1) his job prevented him from complying with the plan of service; (2) he has to keep his job in order to remain in compliance with the conditions of his community supervision; and (3) he has no friends or relatives in the area where S.N. lives with her foster parents. On cross-examination, he agreed that he could conceivably get a different job closer to where S.N. lives and have his community supervision transferred to that county.[6]

The evidence regarding Charles's acts and omissions supports the best-interest finding. The evidence relevant to his excuses for his acts and omissions is conflicting.

*Statutory Factors:* With regard to Charles, five of the statutory factors support the best-interest finding: (a) S.N.'s age and physical and mental vulnerabilities; (b) Charles's history of substance abuse; (c) his failure to submit to a recommended parenting assessment or other recommended services; (d) his failure to establish a safe home environment for S.N.; and (e) his lack of parenting skills. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12). Five of the statutory factors do not apply. *Id.* §

---

[6]     Charles was arrested on the cocaine charge in Waco shortly before S.N. was removed from the home in March 2007. He returned to his hometown in west Texas about one month later.

263.307(b)(2), (5), (6), (7), (9).[7]  And the evidence regarding three of the statutory factors tends to contradict the best-interest finding: (a) "the magnitude, frequency, and circumstances of the harm to the child"; (b) "whether the child has been the victim of repeated harm after the initial report and intervention by the department"; and (c) whether Charles has "an adequate social support system" available for S.N.  *Id.* § 263.307(b)(3), (4), (13).

*Summary:*  Charles himself conceded on cross-examination that S.N. "is best remaining with CPS for now."  Considering all the evidence in the light most favorable to the best-interest finding, a reasonable trier of fact could have formed a firm belief or conviction that termination of Charles's parental rights is in the best interest of S.N.  *See T.N.F.*, 205 S.W.3d at 634.  And viewing all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that termination is in the best interest of S.N.  *Id.*  Therefore, we overrule Charles's sole issue insofar as it challenges the best-interest finding.

### Conclusion

Nancy and Charles did not challenge all of the predicate grounds for termination which the trial court found.  Therefore, we have not addressed their challenges to two of the predicate grounds found.  The evidence is legally and factually sufficient to support the court's findings that termination of the parent-child relationship is in the

---

[7]     The factors which we deem inapplicable are: (a) frequency and nature of out-of-home placements; (b) whether S.N. is fearful of returning to the home; (c) results of psychiatric or psychological evaluation; (d) whether there is a history of abusive conduct in the home; and (e) whether the perpetrator of harm to S.N. has been identified.  *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (5), (6), (7), (9).

best interest of the child with regard to each of them. Accordingly, we affirm the judgment.


FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
    (Chief Justice Gray concurs in the judgment only to the extent it affirms the trial court's order that terminated the parental rights. A separate opinion will not issue.)
Affirmed
Opinion delivered and filed September 17, 2008
[CV06]