

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00282-CV

## IN THE INTEREST OF N.E.S., A CHILD

### From the County Court at Law No. 2
### Johnson County, Texas
### Trial Court No. D200800062

## MEMORANDUM OPINION

The mother of N.E.S. appeals from an order terminating her parental rights. She contends in her sole issue that the evidence is legally and factually insufficient to support either of the predicate grounds for termination or the court's finding that termination is in the best interest of N.E.S. We will affirm.

In a bench trial, the court found that the mother, "Elaine,"[1] (1) knowingly placed or allowed N.E.S. to remain in conditions or surroundings that endangered his physical or emotional well-being and (2) failed to comply with an order that established the actions necessary for the return of the child. *See* TEX. FAM. CODE ANN. § 161.001(1)(D),

---

[1]     To protect the identity of the child, we refer to the mother by a pseudonym. *See* TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2009); TEX. R. APP. P. 9.8(b)(2).

(O) (Vernon Supp. 2010).  The court also found that termination is in the best interest of N.E.S.  Elaine contends in her sole issue that the evidence is legally and factually insufficient to support any of these findings.  We will affirm.

## Standards of Review

For a legal-sufficiency challenge, we view all the evidence in the light most favorable to the challenged findings to determine whether a factfinder could have reasonably formed a firm belief or conviction that the findings are true.  *See In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re T.N.F.*, 205 S.W.3d 625, 630 (Tex. App.—Waco 2006, pet. denied).

For a factual-sufficiency challenge, we "must give due deference" to the challenged findings.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

> The court should inquire "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [ ] allegations."  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."

*Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *accord T.N.F.*, 205 S.W.3d at 630.

## Dangerous Conditions or Surroundings

Regarding the first finding, Elaine argues that the crisis center where N.E.S was removed from her custody was a safe and appropriate environment and, even though the child and she resided "at several different locations" "in the months leading up to

her contact with the Department [of Family and Protective Services]," the Department failed to establish that any of these prior locations posed a danger to N.E.S.

According to the testimony, Elaine and N.E.S. lived in at least eight different locations from the time of his birth until he was removed from her care when he was almost ten months' old.[2] Several of the places where they lived or visited posed a danger to N.E.S. First, when they visited Michael S. for Christmas, Elaine testified that he "violently sodomized" her while N.E.S. was in the room. She testified that this was not "a safe and appropriate place" for N.E.S. and they left "into the cold to get away." She hitched a ride with a man who took her to her friend Christine's home, where they lived about four months. That ended when she got into a "fight" with Christine, who pulled Elaine to the ground while she was holding N.E.S. Then, she moved to a trailer park where she lived with a woman she met in church. A Department investigator testified that Elaine characterized this person as an "unsuitable adult." Elaine testified that this person said that she was bipolar "and it was quite obvious she didn't take her meds." After living there nine days, she stayed with another friend for three days. Then she moved to a 72-hour shelter before she was transferred to the crisis center from which N.E.S. was removed.

The caseworker Kindra Brown testified that these moves created "an unstable situation" for N.E.S. and placed him "in an unsafe condition."

---

[2] The Department maintains that they lived in 10 different locations, which Elaine disputes. For example, the Department includes within this number their stay with Michael S., the father of an older child of Elaine's, for 2 days for "visitation for Christmas." Elaine does not count this stay as a place where they lived, but she did testify that she had nowhere else to go when they left there.

In addition, Elaine testified that she began smoking marijuana when she was seventeen and had also tried cocaine and methamphetamine. She was diagnosed as having problems with substance abuse and alcohol dependence. She tested positive for marijuana twice after N.E.S. was removed from her care. She denied ever smoking marijuana in his presence but conceded that she was around him after having smoked marijuana, which she characterized as "a bad decision." She also reported to a women's center intoxicated on two different nights, in violation of the center's rules.

Under the applicable standard, the evidence is legally sufficient to support the court's finding that Elaine knowingly placed or allowed N.E.S. to remain in dangerous conditions or surroundings. *See In re J.C.*, 151 S.W.3d 284, 288-89 (Tex. App.—Texarkana 2004, no pet.); *In re D.C.*, 128 S.W.3d 707, 715-16 (Tex. App.—Fort Worth 2004, no pet.). The evidence is likewise factually sufficient to support this finding. *Id.*[3]

### Best Interest

We employ the familiar *Holley* factors when evaluating the sufficiency of the evidence to support a finding that termination is in the best interest of the child. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *T.N.F.*, 205 S.W.3d at 632. We also consider the factors listed in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307 (Vernon 2009); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re S.N.*, 272 S.W.3d 45, 51 (Tex. App.—Waco 2008, no pet.).

---

[3] Because we have found the evidence legally and factually sufficient with regard to this predicate ground for termination, we need not examine the sufficiency of the evidence to support the other predicate ground. *See In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

*Desires of the Child:* N.E.S. was two at the time of trial and not of sufficient maturity to express a preference. *See S.N.*, 272 S.W.3d at 51-52.

*Emotional and Physical Needs:* N.E.S. has the usual emotional and physical needs of a toddler. Brown testified that Elaine suffers from major depressive disorder and borderline personality disorder and has attempted suicide "numerous" times. Brown opined that these conditions prevent Elaine from being consistently capable of providing for N.E.S.'s needs, particularly in view of Elaine's history of failure to seek treatment for her mental health needs. *Id.* at 52; *D.C.*, 128 S.W.3d at 717.

*Emotional and Physical Danger:* Elaine's history of drug and alcohol abuse, the violent encounters she experienced during the nomadic existence she had with N.E.S., and the instability of living in so many different locales all contribute to the conclusion that Elaine poses a present and future risk of danger to N.E.S. *See S.N.*, 272 S.W.3d at 52-53; *J.C.*, 151 S.W.3d at 291; *D.C.*, 128 S.W.3d at 717.

*Parental Abilities:* Elaine completed a parenting class as part of her service plan. However, the caseworker and a manager from a women's center where she lived until a month before trial both expressed concerns about her ability to provide adequate parenting for N.E.S. Thus, the evidence is conflicting on this factor. *See S.N.*, 272 S.W.3d at 53.

*Available Programs:* Elaine provided testimony that N.E.S. and she could live in a women's center where she lived for about seven months after N.E.S. was removed from her care. However, she was "exited" from this center about a month before trial because of a verbal altercation with a case manager and another resident. A manager

from the center testified that she did not believe Elaine was stable enough to successfully participate in the program with N.E.S. Thus, the evidence is conflicting on this factor. *Id.*

*Plans for Child:* Elaine testified that she wants to live with N.E.S. in this women's center while she receives the treatment and counseling she needs. However, the manager testified that she does not believe Elaine can successfully participate in the program. The Department plans to keep N.E.S. in foster care until a suitable adoptive home is found. Thus, the evidence is conflicting on this factor. *Id.*

*Stability of the Home:* N.E.S. is currently living in a safe and stable home with his foster parents. Elaine wants to live with him in the women's center although the manager does not believe she can successfully participate due to her history. Beyond Elaine's prior experience in this women's center, she has demonstrated a history of being unable to provide N.E.S. a stable home. Thus, the evidence is conflicting on this factor. *Id.*

*Acts and Omissions:* Elaine's history of drug and alcohol abuse, the violent encounters she experienced during the nomadic existence she had with N.E.S., and the instability of living in so many different locales are all acts and omissions relevant to this factor. Her continued use of marijuana and alcohol after N.E.S.'s removal, her failure to seek treatment on a consistent basis, and her difficulties in the women's center are also relevant. The evidence on this factor supports the best-interest finding. *Id.* at 53-54; *J.C.*, 151 S.W.3d at 291; *D.C.*, 128 S.W.3d at 717.

*Excuses:* Elaine's primary excuse is that she was a victim of domestic violence and thus cannot be blamed for N.E.S.'s exposure to the violent encounters noted. She had to move so frequently because she has no home or family support and no stable employment. However, she offers no excuse for her drug and alcohol abuse, her inability to follow the rules and stay in a rehabilitation center, or her failure to seek treatment on a consistent basis. Thus, the evidence is conflicting on this factor. *See S.N.*, 272 S.W.3d at 54.

*Statutory Factors:* Evidence regarding seven of the thirteen statutory factors listed in section 263.307(b) support the best-interest finding: (1) N.E.S.'s "age and physical and mental vulnerabilities"; (2) "the magnitude, frequency, and circumstances of the harm to [N.E.S.]"; (3) Elaine's mental health history and relevant evaluations; (4) the history of domestic violence; (5) Elaine's substance abuse; (6) her failure to demonstrate adequate parenting skills; and (7) the lack of an adequate social support system. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (6), (7), (8), (12), (13). Three of the statutory factors do not apply. *Id.* § 263.307(b)(2), (5), (9).[4] The evidence regarding two of the statutory factors is conflicting, so we consider these factors to be neutral: (1) Elaine's willingness "to seek out, accept, and complete counseling services" and cooperate with the Department; and (2) her "willingness to effect positive environmental and personal changes within a reasonable period of time." *Id.* § 263.307(b)(10), (11). And the evidence regarding one of the statutory factors tends to contradict the best-interest

---

[4] The factors which we deem inapplicable are: (a) the frequency and nature of out-of-home placements; (b) whether N.E.S. is fearful of returning to Elaine's home; and (c) whether the perpetrator of harm to N.E.S. has been identified. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (5), (9) (Vernon 2009).

finding: "whether the child has been the victim of repeated harm after the initial report and intervention by the department."  *Id.* § 263.307(b)(4).

"Our evaluation of whether the evidence supports a best-interest finding does not involve a precise mathematical calculation despite the listing of relevant factors." *S.N.*, 272 S.W.3d at 54 (citing *C.H.*, 89 S.W.3d at 27; *T.N.F.*, 205 S.W.3d at 632).  Under the applicable standards, we hold that the evidence is legally and factually sufficient to support the court's finding that termination of Elaine's parental rights is in the best interest of N.E.S.

We overrule Elaine's sole issue and affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray concurring with note)*
Affirmed
Opinion delivered and filed October 6, 2010
[CV06]

*    (Chief Justice Gray concurs in the judgment to the extent it affirms the trial court's judgment of termination of Elaine's parental rights.  A separate opinion will not issue.  He notes, however, that the "statutory factors" identified and reviewed relate to a determination of "whether the child's parents are willing and able to provide the child with a safe environment" and as such they are not "statutory factors" directly regarding the best interest of the child in the context of a termination proceeding.  *See* TEX. FAM. CODE § 263.307.  While we can evaluate other factors beyond the *Holley* factors, I find it unnecessary to do so, especially when the record does not contain any indication that the parties presented evidence on these factors, although in the trial in this proceeding they did but they do not argue this evidence in connection with the issue on appeal. Further, it sets a dangerous precedent for us to be weighing into our review factors the parties routinely do not even attempt to address in a termination proceeding.  It is not surprising that neither party cites or discusses these "statutory factors" in their briefing

to this Court of the "best interest" element necessary to terminate the parental rights to the child. Finally, the summary nature in which the Court makes its review of these "statutory factors" makes them seem relatively less important than the other factors. Any factor that we consider, whether it is one of the original *Holley* factors or an additional factor, should be weighed into the analysis based on its relative value in reviewing the determination of best-interest.)