In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00195-CV**
_____

**IN THE INTEREST OF X.L.**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CV1813884**

**MEMORANDUM OPINION**

C.L. ("Father") appeals the trial court's order terminating his parental rights. In his sole issue, Father challenges the legal and factual sufficiency of the evidence supporting the best interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We affirm the trial court's judgment terminating Father's parental rights.

BACKGROUND

In October 2018, the Department of Family and Protective Services ("the Department") filed a petition seeking the termination of Father's parental rights to his son, X.L. The trial court conducted a bench trial on the Department's petition. Chantelle Miller testified that she received X.L.'s case while working as an

1

investigator with the Department, and the allegations included drug use by both parents and concerns regarding the home environment. Miller explained that she made initial contact with M.P., X.L.'s mother (hereafter referred to as "Mother"), who would not allow her in the home. Although Mother reported that X.L. was staying with Father in a hotel, Miller learned that Father was in jail due to a domestic violence incident with Mother. Miller testified that when she visited Father at the jail, he denied the allegations of domestic violence and drug use and also denied that his home lacked working utilities, and Father reported that X.L. was staying with his aunt. Miller testified that Father's aunt denied having X.L., and Miller did not know where X.L. was until she received a tip that X.L. was staying with a family friend.

According to Miller, when she first encountered X.L., he was dirty, unkempt, and appeared to have not been bathed in a few days. After Miller discussed the allegations with Mother, Mother denied drug use but admitted that she did not have working utilities. According to Miller, Mother reported that she was pregnant, and Mother refused a drug test and indicated that she would not cooperate with the Department. Miller also explained that she had concerns about domestic violence between Mother and Father, but she was unable to substantiate the allegations concerning drug use or the condition of the home. Miller testified X.L. was removed due to an unsafe and unstable environment and concerns about domestic violence,

and because there were no placement possibilities when X.L. was removed, X.L.'s case was transferred to a conservatorship.

Father testified that his first contact with the Department was when Miller came to see him in jail, and at that time, he had been in jail for about two days. According to Father, Miller informed him that the Department was removing X.L. from Mother's custody because there was no electricity at her home, and Father testified that there was no power in the home. Father explained that he and Mother have two other minor boys, Z.L., who is also in the Department's care and X., a two-month old who was in the hospital with a collapsed lung.

Father testified that he pays one hundred dollars a month in child support for X.L. and provides clothes and milk. Father testified that he was currently employed and that he had been staying at the Deluxe Inn for the past four months because it was close to his workplace. Father explained that it had been three weeks since he last saw X.L., who is placed with Father's niece, L.L.

Concerning his family service plan, Father testified that he signed his service plan in jail and was released seven or eight months later. Father stated that he was unable to participate in any of the services during his incarceration. Father denied taking drugs and admitted that he had not completed his services because of his work schedule, and stated that he had completed half of the parenting classes and an evaluation at the Department. Father also testified that he had two prior arrests for

assaulting a family member and was convicted on one of the charges and served two years in prison. Father explained that, although the domestic violence incident involving Mother was an accident, he pleaded guilty and was currently on probation for ten years.

According to Father, L.L. was taking good care of X.L., but he believed X.L. should be with him and Mother. Father also testified that he had never seen Mother harm or neglect X.L., and that even though he and Mother are not in a relationship, he helps Mother because they have children together. Father asked that the court not terminate his parental rights because he can take care of X.L. and wants to help raise him.

Mother testified that X.L. was two years old at the time of trial and that when X.L. was removed she was not living at the home about which the Department had been concerned. Mother admitted that she was not cooperative with the Department when X.L. was removed. Mother testified that she has four other children, including X, a newborn who is living with a foster family. Concerning the domestic violence incident with Father, Mother explained that it was an accident, and that she failed to catch a can of beans that Father tossed to her. Mother testified that X.L. was there when the incident occurred, and after Father called an ambulance for assistance, she went to the hospital and received nine stitches on her head. Mother testified that she believed that it was in the best interest of X.L. to remain in L.L.'s care, and Mother

4

wanted to continue to have supervised visitation. Mother testified that Father takes her to visit X.L. and that Father acts appropriately and is not a danger to her or X.L.

Sharonda Easley, a caseworker with the Department testified that Father was incarcerated when X.L. was removed, and she did not know how involved Father was prior to the removal. Regarding Father's service plan, Easley testified that Father completed a drug and alcohol assessment but failed to follow the recommendations. Easley testified that Father also failed to complete parenting classes and to comply with all drug tests. According to Easley, Father exhibited anger during one of the visits with the children when he got into an altercation with Mother. Easley testified that L.L. could provide a good permanent home.

Cindy Moffitt, X.L.'s CASA advocate, testified that X.L. is happy and doing well in his current placement with L.L., and X.L. has a connection with his aunt and cousins. Moffitt testified X.L. has been with L.L. for a year, and L.L. is employed and can provide a home for X.L. According to Moffitt, it was in X.L.'s best interest that Father's parental rights be terminated, because X.L. deserves a permanent home, and L.L. wants to adopt X.L. Moffitt explained that L.L. is also willing to be X.L.'s permanent managing conservator and that L.L. would continue to allow X.L.'s parents to visit if they are not under the influence of drugs. Karen Foyil, the CASA advocate supervisor, testified that she spoke with Father about completing his

services. Foyil explained that Father had not taken the needed steps to provide a safe and stable home.

L.L. explained that she has known Father her entire life, and she wants X.L. to have a connection with Father. L.L. testified that Father wanted X.L. to remain in her home because it is a stable environment. L.L. testified that X.L.'s parents wanted her to be X.L.'s permanent managing conservator, and L.L. indicated that she could protect X.L. and continue to supervise the visits. L.L. testified that termination of Father's rights should be a last resort, but she knew that it was not in X.L.'s best interest to be returned to his parents. According to L.L., it was in X.L.'s best interest to remain with her, and she would allow X.L.'s parents to visit according to her terms and work schedule. L.L. testified that she wants to adopt X.L. and to allow X.L.'s parents to visit as long as they are safe and appropriate, and L.L. understood that parental rights would have to be terminated for her to adopt.

L.L. expressed concern that X.L. acts out after he visits with his parents, and it takes X.L. a day to calm down to his normal self. L.L. also explained that she did not want X.L.'s parents using drugs around X.L. and that it was in X.L.'s best interest that his parents be required to submit to drug testing. According to L.L., Father had paid her two to three hundred dollars in child support for X.L. L.L. also testified that X.L. has bonded with her mother and daughter, and she has plans for X.L. to attend a pre-kindergarten program.

6

The trial court found that clear and convincing evidence supported three predicate statutory grounds for terminating Father's parental rights and that termination of Father's parental rights was in X.L.'s best interest. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (O), (2). Father appealed.

ANALYSIS

In his sole issue, Father contends that the evidence is legally and factually insufficient to demonstrate that termination of his parental rights is in X.L.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). Under legal sufficiency review, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We

7

consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *In the Interest of C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

Regarding the best interest inquiry, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the

future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In the Interest of M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Evidence of a parent's continued drug use supports a finding that he poses a present and future risk of physical or emotional danger to the child and that termination would be in the child's best interest. *See In the Interest of S.N.*, 272 S.W.3d 45, 53 (Tex. App.—Waco 2008, no pet.).

With respect to the child's best interest, the trial court heard evidence that (1) Father had a history of committing family violence and had exhibited anger during one of his visits with X.L., (2) Father failed to complete his service plan, (3) Father failed to take the necessary steps to provide a safe and stable home, (4) Father failed to comply with all drug tests, (5) X.L. is happy and has bonded with L.L. and her family and is doing well in his current placement, (6) X.L.'s best interest would be served by allowing him to remain with L.L., (7) L.L. wants to adopt X.L. and could provide X.L. with a stable and drug-free home, (8) X.L. acts out after visiting with Father and L.L. has concerns about Father's continued drug use, (9) L.L. has plans for X.L. to attend a pre-kindergarten program, and (10) termination of Father's parental rights is in the best interest of X.L. because X.L. deserves a permanent home. The trial court also heard evidence that L.L. could provide a good permanent home for X.L. and would continue to allow Father to be a part of X.L.'s life as long as Father acted appropriately and remained drug-free. Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of Father's parental rights was in X.L.'s best interest. *See id.* § 161.001(b)(2), 263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72.; *In the Interest of S.N.*, 272 S.W.3d

10

at 53; *In the Interest of M.R.*, 243 S.W.3d at 821. We conclude that the Department established, by clear and convincing evidence, that termination of Father's parental rights is in the best interest of X.L. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule Father's sole issue and affirm the trial court's judgment terminating Father's parental rights.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 2, 2020
Opinion Delivered December 10, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.