

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00146-CV

IN THE INTEREST OF
B.R., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In four issues, Appellant Mother appeals the termination of her parental rights to her child, B.R.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

At the time of the termination trial, B.R., who was removed from Mother at birth, was almost nine months old, and Mother, a thirty-year-old pregnant, incarcerated high-school dropout,[2] had three other children living in her mother's care. Prior to her incarceration, Mother had been homeless. Both B.R. and her unborn child were conceived while Mother was working as a prostitute, and Mother and B.R. were both positive for Hepatitis C. Mother started using marijuana when she was around seventeen years old, after having her first child; she was around twenty years old when she started using cocaine. Heroin was her drug of choice when B.R. was born.

Mother was incarcerated at the time of the trial for a prostitution conviction. Her criminal history also included a two-year sentence for felony aggravated assault with a deadly weapon, which she committed against another inmate while she was incarcerated for theft,[3] as well as convictions for forgery, prostitution, and felony possession of a controlled substance; Mother's criminal history dated back to 1998. Mother was jailed on three separate occasions after B.R.'s birth, and she agreed that she had engaged in a continuing course of criminal conduct prior to and since B.R.'s birth.

---

[2]Mother became pregnant with her first of six pregnancies in 1998 after finishing the eleventh grade. Counting B.R., she has had four live births.

[3]Mother said she had been incarcerated for stealing clothing for herself and her children from J.C. Penney because they all liked name brand clothing and could not afford to pay for what they liked.

Mother admitted that she used heroin while pregnant with B.R., that she was "high" when she gave birth to him, and that she had abused heroin during her current pregnancy. She also admitted that she did not have the current ability to provide for B.R. and knew she could not currently provide him with a home or stable environment, but she asserted that she was learning from her mistakes, wanted another chance, and hoped to be able to provide for B.R. in the long run. Mother stated, when asked to explain why terminating her parental rights would not be in B.R.'s best interest, "I don't see why you wouldn't want to give me a chance to be the mother to my child."

Mother's Child Protective Services (CPS) caseworker Vicki Garza testified that Mother's CPS service plan requirements included refraining from any criminal activity; undergoing a psychological evaluation, a drug and alcohol assessment, individual counseling, and drug treatment; taking parenting classes; obtaining stable housing and a verifiable means of income; and taking random drug tests. Garza took over as Mother's CPS caseworker in November 2010, while Mother was incarcerated, and she had no contact with Mother. Garza said that the Department of Family and Protective Services (DFPS) had received three letters from Mother about B.R. prior to Garza taking the case in November and none since; the trial was held in April.

Garza also stated that she had seen the home that B.R. had lived in while placed with Susan Carter (a pseudonym), that it was clean and appropriate, and

that three other children lived there with Carter and her partner.[4] Garza testified that DFPS's plan for B.R. was for Carter to adopt him and that termination of Mother's parental rights was in B.R.'s best interest.

By the time of the trial, Mother had completed her psychological evaluation, inpatient drug treatment, and some visits with B.R., as well as attending drug counseling once and completing four out of fourteen "groups" at MHMR. Mother explained that, in jail, only people with "more time left [get] an opportunity to be in class," so she could not take parenting classes because she only had thirty-four days in the Tarrant County Jail before going back to state jail.

With regard to finding employment, Mother said that she had tried to find a job after she finished her inpatient drug treatment but that "you can't even work at McDonald's with a felony," and the last legitimate work that she clearly remembered involved working at Burger King ten years before. The last time Mother had an apartment was in 2003, and her plan upon being released from jail was to move in with her mother, who had managed to stay drug free for

---

[4]Mother testified that although she had given Carter's name to CPS as a placement for B.R., she only knew Carter through a mutual friend, that she knew Carter was gay, and that if B.R. were to live with Carter permanently, Mother would have a problem with that and would prefer for him to be placed in foster care. But she also acknowledged that B.R. was doing well in Carter's care.

4

around eight years.[5]  B.R.'s ad litem counsel advised the trial court that he recommended termination of Mother's parental rights.

At the conclusion of the trial, the trial court terminated Mother's parental rights to B.R., finding that she had knowingly placed or knowingly allowed B.R. to remain in conditions or surroundings that endangered his physical or emotional well-being; that she had engaged in conduct or knowingly placed B.R. with persons who engaged in conduct that endangered his physical or emotional well-being; that she had been the cause of B.R. being born addicted to alcohol or a controlled substance; and that termination of Mother's parental rights to B.R. would be in B.R.'s best interest.  *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (R), (2) (West Supp. 2011).  This appeal followed.

### III. Termination of Parental Rights

In her first two issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's endangerment findings under section 161.001(1)(D) and (E).  In her fourth issue, Mother argues that the evidence is factually insufficient to support the trial court's best interest finding.

### A. Standard of Review

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground

---

[5]Mother had been raised by her grandmother from age five because her mother had a drug problem.  Mother's father was an intravenous drug user who had Hepatitis C before he died.

listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the

6

finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated subsection (D), (E), or (R) of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Endangerment

Mother argues that while it was undisputed at trial that she had a history of drug use and criminal activity, the evidence was legally and factually insufficient to support the trial court's endangerment findings because she had made

7

significant progress in completing her service plan and drug rehabilitation, and her incarceration prevented her from completing all of it. Further, she argues that she could not have endangered B.R. because B.R. was removed by CPS at birth. Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.C.T.*, 250 S.W.3d 161, 169 (Tex. App.—Fort Worth 2008, no pet.).

Mother admitted that she used heroin during her pregnancy with B.R. and after he was born, that she was in and out of jail during the pendency of this case, and that she was involved in a continuing course of criminal conduct— including prostitution—prior to and since B.R.'s birth. Drug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being. *In re J.M.*, No. 02-08-00259-CV, 2009 WL 112679, at *4 (Tex. App.— Fort Worth Jan. 15, 2009, no pet.) (mem. op.); *see also In re E.A.W.S.*, No. 02-06-00031-CV, 2006 WL 3525367, at *11 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied) (mem. op.) (stating that mother's overdose of Ambien while thirty-nine weeks' pregnant endangered her unborn child's physical well-being); *In re U.P.*, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) ("Endangerment may include what a parent does both before and after birth of a child."). Further, while imprisonment alone is not a basis to terminate a parent's rights, it is an appropriate endangerment factor to consider because when a parent is incarcerated, she is absent from the child's daily life

and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being. *J.M.*, 2009 WL 112679, at *4.

Mother's testimony about her conduct before and after B.R.'s birth could have led the trial court to reasonably form a firm belief or conviction that she knowingly placed or knowingly allowed B.R. to remain in conditions or surroundings that endangered his physical well-being while in the womb, and that she engaged in a course of conduct that endangered his emotional well-being after his birth. *See J.P.B.*, 180 S.W.3d at 573. Further, on the entire record as set out in detail above, the trial court could have reasonably formed a firm conviction or belief that Mother had endangered B.R. by absenting herself from his life with her repeated convictions for prostitution. *See H.R.M.*, 209 S.W.3d at 108. Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's endangerment findings under section 161.001(1)(D) and (E), and we overrule Mother's first two issues.[6]

## C. Best Interest

In her fourth issue, Mother argues that the evidence is factually insufficient to support the trial court's best interest finding in light of her plans for the future, her ability to meet B.R.'s physical and emotional needs, the lack of evidence

---

[6]Because, along with a best interest finding, a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination, *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.), we do not reach Mother's third issue challenging the trial court's finding under section 161.001(1)(R). *See id.*; *see also* Tex. R. App. P. 47.4.

regarding acts or omissions by her that would indicate that the parent-child relationship is improper, and the excuses for her acts or omissions.

While there is a strong presumption that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). The following factors, among others, should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment: the child's age and physical and mental vulnerabilities; whether there is a history of substance abuse by the child's family or others who have access to the child's home; and whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *R.R.*, 209 S.W.3d at 116.

Other, nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)   the desires of the child;

(B)   the emotional and physical needs of the child now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

(E)   the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

In support of her best interest argument, Mother references her visits with B.R. prior to her incarceration and her testimony showing that she was eager to reunite with him and provide for his needs, as well as the evidence showing that she had written to DFPS to inquire about B.R. several times during her incarceration, and her plan to live with her mother, who takes care of her three older children, following her release from jail. Mother contends that inferring that her extensive history of past drug use would constitute a future danger to B.R. amounts to "mere speculation" as she had completed inpatient drug rehabilitation and her most recent drug test indicated that she was drug free. Mother testified

11

that she was due to be released from jail within thirty days of the trial, planned to find a job after her release, and planned to have a drug-free future.

Notwithstanding Mother's three letters to DFPS prior to November about B.R., she did not send any letters after Garza took the case. Further, although Mother testified that she planned to be a clean and sober, responsible parent for B.R. and said that "[n]one of [her] kids ha[d] been born with drugs except for [B.R.]," she also stated that she was "not trying to argue the fact that [she was] obviously unfit" to parent by CPS's standards. She also admitted that she was unable to provide B.R. with any stability at the time of the trial and that he should not have to wait around for her.

Furthermore, Mother repeatedly stated that her family was not close-knit. After her grandmother died in 2004 while Mother was in jail, Mother was left with no social support. Her own mother, with whom Mother proposed to live with B.R. once released from jail, had a history of drug use, although Mother said her mother had been clean for eight years. Mother said that all of her friends were on drugs, so she could not seek help from them. Mother said her sister had no interest in taking responsibility for B.R., and she gave the following testimony when asked whether she had said that her mother would not help her with her unborn child:

> No. I said that she doesn't want—she don't [sic] want to take the child or whatever. As far as that's concerned, she don't want to take [B.R.]. She wants me to have to do this on my own. I said that I was sure that if anything was to happen, like if you guys did try to take her, I'm pretty sure, as long as I'm doing the right thing, they

12

> won't have a problem with helping me, but if I'm out on drugs, doing my own thing, of course they don't want to help me. I mean, who would? It's pretty much you have to want to help yourself before anybody else will help you.

Mother said that she did not put her mother forward as a placement for B.R., placing him instead with Carter on the recommendation of a mutual friend, because her mother was trying to practice tough love with her. Mother also noted that she did not have the ability to provide for B.R. at the time of trial but said that she hoped to be able to in the future; she acknowledged that as a former felon, she would have trouble finding work to provide for B.R.

While evidence of illegal drug use is generally considered in evaluating the predicate grounds for termination, it is also relevant to determining whether a parent poses a present or future risk of physical or emotional danger to the child, so the trial court could reasonably have considered Mother's past acts in making its best interest determination. *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.). But notwithstanding Mother's extensive past substance abuse and criminal history, her lack of an adequate social support system to help her care for B.R. also supports the trial court's best interest finding. *See* Tex. Fam. Code Ann. § 263.307(b); *R.R.*, 209 S.W.3d at 116; *see also In re N.R.*, No. 02-10-00392-CV, 2011 WL 1833132, at *7 (Tex. App.—Fort Worth May 12, 2011, no pet.) (mem. op.) (concluding that parent did not have an adequate social support system when her family had disowned her, she tended to rely on men to support her, and she had a long history of being with violent partners); *S.N.*, 272

13

S.W.3d at 54 (weighing parent's lack of an adequate social support system with other factors to support trial court's best interest finding).

Further, the trial court could have found Mother's repeated incarcerations while the termination case was pending and her failure to maintain contact with B.R. through DFPS as emotionally endangering to B.R., in addition to Mother's lack of parenting skills—shown by her other three children being cared for by her own mother—and her testimony about her lack of stability as a parent. *See Holley*, 544 S.W.2d at 371–72. Having reviewed the entire record, we conclude that the trial court could have reasonably formed a firm conviction or belief that termination of Mother's parental rights to B.R. would be in B.R.'s best interest. *See H.R.M.*, 209 S.W.3d at 108; *C.H.*, 89 S.W.3d at 28. Therefore, we overrule Mother's fourth issue.

## IV. Conclusion

Having overruled Mother's dispositive issues, we affirm the trial court's judgment terminating her parental rights to B.R.

PER CURIAM

PANEL:  MCCOY, WALKER, and MEIER, JJ.

DELIVERED:  November 10, 2011