

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-16-00277-CV

---

## IN THE INTEREST OF G.R., M.R., A.R., & A.R., CHILDREN

---

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 11406-L1, Honorable Jack M. Graham, Presiding

---

October 25, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, B.R., the mother of G.R., M.R., A.R., and A.R.,[1] appeals the trial court's judgment terminating her parental rights to the children. In support of its judgment, the trial court found, by clear and convincing evidence, that B.R.'s parental rights should be terminated pursuant to subsections (D), (E), and (O) of Texas Family Code section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O)

---

[1] To protect the minors' identities, the children and members of their family will be referred to by their initials. *See* TEX. R. APP. P. 9.8(b)(2).

(West Supp. 2016).[2]  The trial court also found, by clear and convincing evidence, that termination of B.R.'s parental rights is in the children's best interest.  *See* § 161.001(b)(2).  B.R. appeals on the grounds that the evidence was legally and factually insufficient to support the trial court's finding that she failed to complete her service plan as ordered and termination is in the children's best interest.  B.R. does not contest the trial court's statutory predicate acts findings under section 161.001(b)(1)(D) or (E).  We will affirm.

## Factual and Procedural Background

B.R.'s children that are involved in this case were four-, two-, and one-year-old twins, and had been in the Department's care for approximately a year at the time of trial.  The Department had previously opened two cases involving B.R. that were ultimately closed when the Department could not subsequently locate B.R.  The first case related to domestic violence.  The second case related to drug use.

In February 2015, police were called to B.R.'s residence based on a report that two toddlers were unattended near an intersection.  When officers arrived, the children had already been reunited with their mother.  During the investigation, the responding officer opined that B.R. appeared to be under the influence; that there was broken glass, general debris, and a pile of wood and trash around the outside of the home; and that, while the officer was completing his investigation, one of the children was found with a loaded handgun that had not been properly secured.  Following these events, the Department removed the children.

---

[2] Further reference to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

2

B.R. was given a service plan that identified the services that she would need to utilize to obtain the return of her children. B.R. completed many of the ordered services, but she failed to complete them all. She was discharged by her therapist, even though the therapist was of the opinion that further therapy could be beneficial to B.R. B.R. also failed to complete domestic violence services and failed to submit to two drug screens. Also, throughout the pendency of the case, B.R. failed to maintain stable employment and housing.

When the children were first placed with a foster family, the older children exhibited severe behavioral problems, such as hitting and biting. However, after being in the foster family for a year, they exhibited significant behavioral improvement. The children did experience behavioral setbacks for a couple of days after B.R. would visit. These setbacks would include a return of some of the prior aggressive behaviors and "potty accidents." When B.R.'s visitation was suspended in February 2016, the children stopped having these behavioral setbacks.

After a bench trial, the trial court found that B.R. knowingly placed or allowed the children to remain in conditions which endangered their physical or emotional well-being, *see* § 161.001(b)(1)(D), engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being, *see* § 161.001(b)(1)(E), and failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children after they had been placed in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent for the abuse or neglect of the children, *see*

3

§ 161.001(b)(1)(O).  The trial court also found that termination of B.R.'s parental rights was in the children's best interest.  *See* § 161.001(b)(2).  Based on these findings, the trial court terminated B.R.'s parental rights and named the Department permanent managing conservator of the children.  It is from this judgment that B.R. appeals.

B.R. presents two issues by her appeal.  By her first issue, she challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that she failed to complete her service plan as ordered, pursuant to section 161.001(b)(1)(O).  By her second issue, B.R. challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of B.R.'s parental rights is in the children's best interest, pursuant to section 161.001(b)(2).

Standard of Review

The natural right existing between parents and their children is of constitutional dimensions.  *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).  A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit.  *Holick*, 685 S.W.2d at 20.  As such, we are required to strictly scrutinize termination proceedings.  *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980).  However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights.  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes both (1) one or more acts or omissions enumerated under section 161.001(b)(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001(b). Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.*, 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001(b). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's judgment of termination if legally and factually sufficient evidence supports any one of the grounds found in the judgment, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

When we employ the clear and convincing evidence standard, we are not saying that the evidence must negate all reasonable doubt or that the evidence is required to be uncontroverted. *See In re R.D.S.,* 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995,

no writ). We may not substitute our judgment for that of the factfinder; rather, we must afford due deference to the decisions of the factfinder. *See In re A.B.,* 437 S.W.3d 498, 503 (Tex. 2014). The factfinder is the sole arbiter when making determinations regarding the credibility and demeanor of the witnesses. *See id.*

When reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 265–66. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* at 266. In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a judgment of termination, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *See In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not

6

reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Analysis

Statutory Predicate Acts

B.R. has not appealed the trial court's findings that she knowingly placed or allowed the children to remain in conditions which endangered their physical or emotional well-being, *see* § 161.001(b)(1)(D), or engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being, *see* § 161.001(b)(1)(E). Rather, she simply challenges the sufficiency of the evidence to support the trial court's finding that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children after they had been placed in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent for the abuse or neglect of the children. *See* § 161.001(b)(1)(O). However, unchallenged findings of statutory predicate acts are binding and sufficient to support the trial court's judgment so long as there is also probative evidence that termination of the parent's parental rights is in the children's best interest. *See In re C.R.T.H.*, No. 13-13-00032-CV, 2013 Tex. App. LEXIS 5385, at *12 (Tex. App.—Corpus Christi May 2, 2013, no pet.) (mem. op.) (citing *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.)); *In re V.M.O.*, No. 07-09-00187-CV, 2009 Tex. App. LEXIS 9658, at *7 (Tex. App.—Amarillo Dec. 18, 2009, no pet.) (mem. op.); *Perez v. Tex. Dep't of Family & Protective Servs.*, 148 S.W.3d 427, 434 (Tex. App.—El Paso 2004, no pet.). Since appellant does not challenge the trial

7

court's findings under subsections (D) or (E), we need not address B.R.'s challenges to the sufficiency of the evidence supporting termination under subsection (O). *See In re V.M.O.*, 2009 Tex. App. LEXIS 9658, at *8 (citing *In re S.N.*, 272 S.W.3d at 49).

Best Interest of the Children

In *Holley*, the Texas Supreme Court outlined a non-exhaustive set of factors to be used in determining whether termination of the parent-child relationship is in the best interest of the child. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The factors are as follows: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parenting abilities of the parent seeking custody; (5) the programs available to assist the parent; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *See id.*; *see also In re D.S.,* 333 S.W.3d 379, 383–84 (Tex. App.— Amarillo 2011, no pet.). In applying the *Holley* factors, "a trier of fact may measure a parent's future conduct by his or her past conduct." *In re D.S.* 333 S.W.3d at 384. The evidence need not establish proof that all of the *Holley* factors support the conclusion that termination is in the best interest of the children, and the absence of evidence about some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.,* 89 S.W.3d at 27.

As relevant to the determination of the children's best interest, evidence established that the following facts are true:

1. In 2013, the Department opened a case on the basis of allegations that C.R., B.R.'s estranged husband, was physically abusing B.R. During the termination trial, B.R. testified that the children witnessed the domestic violence on one occasion.

2. During this 2013 investigation, both B.R. and C.R. tested positive for methamphetamine.

3. B.R. has been diagnosed with both post-traumatic stress disorder and adjustment disorder.

4. In February 2015, law enforcement officers were dispatched to B.R.'s residence because of a report that two toddlers were running near the roadway. When officers arrived, the children had already been reunited with B.R. The responding officer testified that B.R. appeared to be under the influence; that there was broken glass, general debris, and a pile of wood and trash around the outside of the home; and that, while the officer was completing his investigation, one of the children was found with a loaded handgun that had not been properly secured. Following these events, the Department removed the children.

5. During the case, B.R. admitted using methamphetamine for about a week after the children were removed and she also admitted using marijuana.

6. While B.R. completed many court-ordered services, she failed to complete all of them. Due to B.R.'s life circumstance, her therapist discharged her because she was "not in a position to further address other mental health needs." B.R. failed to complete domestic violence services and submit to two requested drug screens.

7. B.R. failed to maintain stable housing throughout the time of Department involvement. In April 2015, B.R. did not have an address. In May, B.R. indicated that she was moving into a new home but, in June and July, she was living in Chattanooga. In August, she lived on Willow Creek for three days before being evicted. In September, she lived at a domestic violence shelter. B.R. then lived at a residence on Lamar in November. In December, she moved to a shelter in Plainview but was asked to leave in January. In March, B.R. moved into an apartment but moved out after only a couple of weeks because someone kicked in her door. After this, she moved in with a friend. B.R. admitted that she had not shown stability over the preceding eighteen-month period.

8. According to the testimony, B.R. held ten or eleven different jobs over this eighteen-month period including periods of time when she was unemployed.

9. After B.R. would exercise her visitation with the children, their behavior would be worse and they would have "potty accidents" for a couple of days. However, after B.R.'s visitation was suspended in February 2016, the children no longer exhibited these behaviors.

10. The children exhibited significant behavioral difficulties when first placed in foster care. However, after a year, they are exhibiting behavioral improvement. The older children will require therapeutic services in the future to help with remaining behavioral issues.

We will address these factual matters in analyzing the *Holley* factors as applied to the termination of B.R.'s parental rights.

The evidence established that the children, who are too young to articulate their desires, have exhibited improved behavior since being placed with their current foster family. However, when B.R. would exercise visitation with the children, their behavior would digress for a couple of days afterward. Such contrasting behavior when with the foster family and the parent seeking custody is relevant to the desires of the children. *See In re K.A.D.K.*, No. 04-15-00758-CV, 2016 Tex. App. LEXIS 4056, at *10 (Tex. App.—San Antonio Apr. 20, 2016, no pet. h.) (mem. op.). As such, the first *Holley* factor supports termination of B.R.'s parental rights.

The unchallenged findings that B.R. knowingly placed or allowed the children to remain in conditions which endangered their physical or emotional well-being, *see* § 161.001(b)(1)(D), and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being, *see* § 161.001(b)(1)(E), support the proposition that termination of the parent-child relationship is in the best interest of the children under the second and third *Holley*

10

factors. *See In re C.C.*, No. 13-07-00541-CV, 2009 Tex. App. LEXIS 2239, at \*30 (Tex. App.—Corpus Christi Apr. 2, 2009, pet. denied). In addition, B.R. admitted that she continued to use drugs after her children were removed. Further, B.R. exhibited no stability in housing or maintaining employment. The second and third *Holley* factors strongly support the termination of B.R.'s parental rights.

The record reflects that the Department became involved in the present instance when B.R.'s children were left unattended near an intersection. The residence where B.R. and the children lived at that time had dangerous debris around the outside of the residence and, while police were in the house, one of the children was found in possession of a loaded firearm. B.R. remained in an abusive relationship and testified that the children witnessed her being assaulted on at least one occasion. Also, B.R. has a history of drug abuse. B.R.'s past neglect and inability to meet the children's physical and emotional needs is relevant in assessing a parent's ability to care for the children. *See Wischer v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00165-CV, 2012 Tex. App. LEXIS 7523, at \*34-36 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.); *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). In addition, B.R. continued to use drugs, was arrested, and failed to maintain stable housing or employment after her children were removed by the Department. The fourth *Holley* factor supports the termination of B.R.'s parental rights.

There are a number of programs available to assist B.R. However, the record reflects that she did not complete the services that she was ordered by the court to complete. While B.R. did avail herself of many, if not most, of the services contained within her service plan, her actions during the pendency of the case do not establish

11

that these programs were effective. In addition, her counselor testified that, due to B.R.'s instability, "I didn't feel like we were making any more progress therapeutically." As such, the fifth *Holley* factor weighs in favor of termination.

The children are doing well in their foster family placement. Their behavioral issues have improved since being in this placement and this placement has been stable for the year that they have been there. *See In re J.M.D.*, No. 11-09-00296-CV, 2010 Tex. App. LEXIS 7313, at *18 (Tex. App.—Eastland Sept. 2, 2010, pet. denied) (mem. op.) (behavioral improvement occurring after placement relevant to best interest determination). By contrast, B.R. has been unable to maintain steady employment or housing throughout the pendency of this case. Thus, the seventh *Holley* factor supports termination.

B.R. has a history of drug abuse, failed to properly supervise the children leading to a report that they were located near an intersection, continued to use drugs even after her children were removed, was arrested during the pendency of the case, and was unable to maintain stable housing or employment throughout the pendency of the case. Further, B.R. has a history of being in violent relationships and that she allowed her children to witness one instance of domestic violence. The eighth *Holley* factor weighs in favor of termination.

Finally, we note that B.R. does not present any excuse for her acts or omissions as they relate to the children.

When we look at all of the evidence in the light most favorable to the trial court's ruling, we conclude that the evidence is such that a reasonable trier of fact could have

formed a firm belief or conviction that termination of B.R.'s parental rights is in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 265-66. As such, the evidence is legally sufficient and we overrule B.R.'s contention to the contrary.

Likewise, we conclude that the evidence is such that the factfinder could reasonably form a firm belief or conviction as to the truth of the allegations sought to be established; namely, that termination of B.R.'s parental rights would be in the children's best interest. *See In re C.H.*, 89 S.W.3d at 25. Accordingly, the evidence is factually sufficient and we overrule B.R.'s contention to the contrary.

## Conclusion

Having overruled B.R.'s issues, we affirm the judgment of the trial court terminating her parental rights to the children.

Mackey K. Hancock
Justice