In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00080-CV**

**IN THE INTEREST OF B.S. AND R.N.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 20-03-04184-CV**

## MEMORANDUM OPINION

D.N.[1] appeals the trial court's order terminating her parental rights. In six issues, D.N. challenges the legal and factual sufficiency of the evidence supporting the best-interest finding and the termination grounds specified in sections 161.001(b)(1)(D), (E), (N) and (O), as well as the legal and factual sufficiency of the evidence supporting the trial court's appointment of the Department of Family and Protective Services ("the Department") as sole managing

---

[1]To preserve the privacy of the parties, we refer to the parties and the child by their initials. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

conservator. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (N), (O), (2); 161.207. We affirm the trial court's judgment terminating D.N.'s parental rights.

Background

In March 2020, the Department filed a petition seeking the termination of D.N.'s parental rights to her children, B.S. and R.N. In March 2021, the trial court conducted a bench trial on the Department's petition. Lindsay Higdon, a Department caseworker, testified that she contacted D.N. in April 2020 when the case began, and Higdon explained that she had consistent contact with D.N. until D.N. went to jail in the summer of 2020. Higdon testified that D.N. contacted her the month before trial and requested her attorney's contact information, which Higdon provided. Higdon explained that a Family Plan of Service was developed for D.N., which included drug testing, psychological evaluation, psychiatric evaluation, substance abuse assessment, individual therapy, and potential family therapy. According to Higdon, she made multiple referrals for the services in D.N.'s plan, but D.N. did not participate in any services and failed to submit to drug testing.

Higdon explained that B.S. and R.N. have been placed separately with two different aunts for almost a year, and the goal is for those aunts to adopt the children. Higdon testified that D.N. failed to: (1) demonstrate the ability to provide a safe and stable home for the children, (2) maintain regular visitation, and (3) provide financial support. According to Higdon, D.N.'s last visit with the children was in July or

2

August of 2020. Higdon explained that it was in the children's best interest that D.N.'s rights be terminated because D.N. has been incarcerated, has only visited with the children a handful of times, and is unable to provide a safe and stable home for the children.

Katrina Paul, the children's aunt, testified that B.S. is three years old and has been placed with her for almost fifteen months. Katrina explained that prior to being placed with her, B.S. was passed around many times between family members because D.N. was "never real fit to have them." According to Katrina, D.N. bounced around from homes, was in an out of drugs, and left B.S. for long periods of time with family. Katrina testified that D.N. has never been employed or had a stable home, and Katrina could tell D.N. used drugs due to the "marks on her arm and her behavior."

Katrina testified that R.N. is placed with her husband's sister, Shaundra Paul, who lives two miles away, and Katrina helps Shaundra care for R.N. Katrina explained that B.S. and R.N. attend the same daycare and see each other five to six days per week. Katrina testified that she wants to adopt B.S. and provide a stable home because B.S. deserves happiness and a loving future. According to Katrina, it has been over six months since D.N. last saw B.S., and D.N. has not provided any support or contacted her.

Shaundra, R.N.'s aunt, testified that R.N. is fifteen months old, and Shaundra explained that she brought R.N. home from the hospital. Shaundra testified that D.N. has never had stable employment and is unable to provide a home for R.N. Shaundra explained that D.N. only visited R.N. a few times when the case began, and D.N. has not provided any financial support. Shaundra testified that she plans to adopt R.N.

Karen Thorpe, the court-appointed special advocate (CASA), testified that she has been assigned to the children's case since the beginning, and Thorpe explained that the children are doing wonderful in their placements. Thorpe testified that it was in the children's best interest that D.N.'s parental rights be terminated because D.N. has failed to show that she can provide for herself and the children.

After taking judicial notice of the court's file, the trial court found that clear and convincing evidence supported four predicate statutory grounds for terminating D.N.'s parental rights and that termination of D.N.'s parental rights was in the best interest of B.S. and R.N. *See id.* § 161.001(b)(1)(D), (E), (N), (O), (2). The trial court appointed the Department as the permanent managing conservator of B.S. and R.N. D.N. appealed.

Analysis

In issue one, D.N. contends that the evidence is legally and factually insufficient to support termination of her parental rights under section

4

161.001(b)(1)(D) of the Family Code, and in issue two, D.N. argues that the evidence is legally and factually insufficient to support termination under section 161.001(b)(1)(E). *See id.* § 161.001(b)(1)(D), (E). In issue three, D.N. challenges the legal and factual sufficiency of the evidence supporting termination of her parental rights under section 161.001(b)(1)(N). *See id.* § 161.001(b)(1)(N). In issue four, D.N. challenges the legal and factual sufficiency of the evidence supporting termination of her parental rights under section 161.001(b)(1)(O). *See id.* § 161.001(b)(1)(O). In issue five, D.N. contends the evidence is legally and factually insufficient to demonstrate that termination of her parental rights is in the best interest of B.S. and R.N. *See id.* § 161.001(b)(2). In issue six, D.N. contends the evidence is legally and factually insufficient to support the trial court's appointment of the Department as sole managing conservator of B.S. and R.N. We address issues one through five together.

Under legal sufficiency review, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that

5

the matter that must be proven is true, the evidence is legally insufficient. *Id*. Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. (citation omitted). We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best-interest finding

6

is also supported by legally and factually sufficient evidence. *In the Interest of C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.). However, when, as here, a parent challenges a trial court's findings under section 161.001(b)(1)(D) or (E), we must review the sufficiency of those grounds as a matter of due process and due course of law. *See In the Interest of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

Section 161.001(b)(1)(D) of the Family Code allows for termination of a parent's rights if the trier of fact finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). A parent's conduct in the home can create an environment that endangers the child's physical and emotional well-being. *In the Interest of J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "The factfinder may infer from past conduct endangering the child's well-

7

being that similar conduct will recur if the child is returned to the parent." *In the Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (citation omitted).

For purposes of subsection (E), endangerment means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *In the Interest of M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). Termination under subsection (E) must be based on more than a single act or omission and requires a voluntary, deliberate, and conscious course of conduct by the parent. *Interest of M.L.L.*, 573 S.W.3d at 363-64. A parent's conduct that subjects a child's life to instability and uncertainty endangers the emotional or physical well-being of a child. *Id.* at 363. Endangerment is not limited to actions directed toward the child and includes the parent's actions before the child's birth and while the parent had custody of older children, including evidence of drug usage. *In the Interest of J.O.A.*, 283 S.W.3d at 345. Courts may consider whether a parent's drug use continues after the child is removed from the parent's care, as such conduct shows a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *In the Interest of J.S.*, 584 S.W.3d 622, 634-35 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see In the Interest of M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied).

The clerk's record shows that based on the affidavit of April Lowry, a Department caseworker, the trial court issued an emergency temporary order in April 2020, naming the Department as the temporary sole managing conservator of the children based on its findings that there was an immediate danger to the physical health or safety of the children and that the continuation of the children in the home of D.N. would be contrary to the children's welfare. According to Lowry's affidavit, the Department received a referral regarding the negligent supervision of R.N. by D.N. The referral alleged that D.N. and R.N. tested positive for marijuana when R.N. was born, D.N. admitted using marijuana and methamphetamine during her pregnancy and while caring for B.S., and D.N. reported that she had been in jail twice during her pregnancy. Lowry averred that D.N. reported having a prior history with the Department regarding B.S in 2018, when she stole her boyfriend's grandmother's car and wrecked it and also reported that she had pending charges for the unauthorized use of a motor vehicle and assault. According to Lowry, the children were placed with Shaundra and Katrina due to concerns about D.N.'s drug use, and after the placement, Shaundra expressed concerns because D.N. was homeless, using drugs, and had been in a fight and slit her wrists.

Lowry further averred that she discussed the service plan with D.N. and explained that the Department was concerned about D.N.'s drug use and mental health, and D.N. agreed to go to a rehabilitation center and submit to drug testing,

but D.N. failed to submit to drug testing and to seek treatment. Lowry averred that in February 2020, D.N. tested positive for marijuana, methamphetamines, amphetamines, and benzodiazepines. According to Lowry, in March 2020, a court ordered D.N. to attend drug treatment, but D.N. failed to attend, continued to use drugs, and did not show any efforts to stop. Lowry also averred that D.N. continued to be homeless, and Shaundra and Katrina reported that D.N. had threatened to burn their houses down and they were concerned for their safety.

The record shows that D.N. did not appear at trial, and the trial court denied D.N.'s counsel's motion for continuance. The trial judge heard evidence that D.N. failed to complete her services and had not maintained employment or provided an appropriate home. The trial judge heard that D.N. had not provided any support for the children and had only visited the children a few times since the case began. The trial court also heard evidence that D.N. failed to show that she could provide for her herself or the children.

The trial court also considered evidence that D.N. continued to use drugs and engage in criminal conduct after the children's removal. The record includes an Order of Deferred Adjudication which shows that on May 21, 2020, D.N. pleaded guilty to the unauthorized use of a vehicle and was placed on deferred adjudication community supervision for a period of four years and ordered to attend a residential treatment facility. The record includes a Motion to Adjudicate Guilt filed on July 31,

2020, in which the State alleged that D.N. violated the terms of her community supervision by (1) testing positive on July 16, 2020, for methamphetamine, amphetamine, and carboxy THC; (2) failing to report to her community supervision officer; and (3) failing to attend and remain in a residential drug treatment. The record also includes a Judgement Adjudicating Guilt dated January 27, 2021, which shows that D.N. pleaded "true" to violating the terms of her community supervision and that the trial court found her guilty of unauthorized use of a vehicle and assessed punishment at 160 days in jail. Additionally, the record includes a Judgement of Conviction by Court dated December 2, 2020, showing that D.N. pleaded guilty to attempted escape committed in August 2020, and assault causing bodily injury committed in September 2020, and the trial court assessed D.N.'s punishment at 180 days in jail in each case and ordered the sentences to run concurrently. The record also includes a Judgement of Conviction by Court dated December 21, 2020, showing that D.N. pleaded guilty to committing a 2018 assault, and the trial court assessed punishment at thirty-three days in jail.

Viewing the evidence in the light most favorable to the trial judge's findings, we conclude that the trial judge could reasonably have formed a firm belief or conviction that D.N. knowingly placed or knowingly allowed B.S. and R.N. to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct or knowingly placed B.S. and R.N. with persons

11

who engaged in conduct that endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In the Interest of J.O.A.*, 283 S.W.3d at 345; *In the Interest of J.F.C.*, 96 S.W.3d at 266; *In the Interest of J.S.*, 584 S.W.3d at 635; *Interest of M.L.L.*, 573 S.W.3d at 363; *In the Interest of M.R.J.M.*, 280 S.W.3d at 502; *In the Interest of J.T.G.*, 121 S.W.3d at 125.

Regarding the best-interest inquiry, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best-interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

12

"A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In the Interest of M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). Evidence of a parent's continued drug use supports a finding that she poses a present and future risk of physical or emotional danger to the child and that termination would be in the child's best interest. *See In the Interest of S.N.*, 272 S.W.3d 45, 53 (Tex. App.—Waco 2008, no pet.).

With respect to the best interest of B.S. and R.N., the trial court heard evidence that D.N. (1) had been incarcerated and continued to engage in criminal activity throughout the case, (2) failed to submit to drug testing and continued to use drugs throughout the case, (3) failed to complete any services in her family service plan, (4) failed to maintain employment or provide an appropriate home for B.S. and R.N. to return to, (5) failed to maintain regular visitation and provide financial support, (6) failed to attend court ordered drug treatment, and that (7) B.S. and R.N. have stability in their current placements which are willing to provide forever homes.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of D.N.'s parental rights is in the best interest of B.S. and R.N. *See id.* §§ 161.001(b)(2),

13

263.307(a); *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72; *In the Interest of S.N.*, 272 S.W.3d at 53; *In the Interest of M.R.*, 243 S.W.3d at 821.

We conclude that the Department established, by clear and convincing evidence, that D.N. committed the predicate acts enumerated in sections 161.001(b)(1)(D) and (E) and that termination of D.N.'s parental rights is in the best interest of B.S. and R.N. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (2); *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1. Accordingly, we overrule issues one, two, and five. Having concluded that the evidence was legally and factually sufficient to support the trial court's findings as to subsections 161.001(b)(1)(D), (E), and (2), we need not reach issues three and four, in which D.N. challenges the sufficiency of the evidence supporting the trial court's findings under sections 161.001(b)(1)(N) and (O). *See In the Interest of N.G.*, 577 S.W.3d at 235; *In the Interest of C.A.C., Jr.*, 2011 WL 1744139, at *1; *see also* Tex. R. App. P. 47.1.

In issue six, D.N. challenges the legal and factual sufficiency of the evidence supporting the trial court's appointment of the Department as sole managing conservator. According to D.N., the Department failed to show that its abilities to act as a managing conservator were above hers. The State argues that since D.N.'s challenges to the termination of parental rights have failed, her challenge to the

14

appointment of the Department as managing conservator also fails. We agree with the State.

Section 161.207 of the Texas Family Code provides that if the trial court terminates the parent-child relationship with respect to both parents, the Court shall appoint a suitable, competent adult, the Department, or a licensed child-placing agency as managing conservator of the child. Tex. Fam. Code Ann. § 161.207(a). Here, the trial court terminated the parental rights of all living parents.

Having affirmed the trial court's judgment terminating D.N.'s parental rights, D.N.'s challenge to the conservatorship appointment was subsumed in the issues related to the termination of her parental rights. *See In re D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008). Accordingly, we overrule issue six. Having addressed each of D.N.'s issues, we affirm the trial court's judgment terminating D.N.'s parental rights.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on June 29, 2021
Opinion Delivered August 12, 2021

Before Golemon, C.J., Horton and Johnson, JJ.