

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00292-CV

**IN THE INTEREST OF A.V. AND A.R., CHILDREN**

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 096568-D-FM, Honorable Steven Denny, Presiding

February 19, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, A.J., appeals from the trial court's order terminating her parental rights to her children, A.V. and A.R.[1]  By three issues, she challenges the legal and factual sufficiency of the evidence to support termination under (1) section 161.001(b)(1)(E), (2) section 161.001(b)(1)(O), and (3) section 161.001(b)(2) of the Texas Family Code.[2]  We affirm.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d).  *See also* TEX. R. APP. P. 9.8(b).  The father's rights were terminated pursuant to an affidavit of relinquishment and he is not a party to this appeal.

[2] In her issues presented in the Table of Contents, she challenges only the factual sufficiency of the evidence; however, the body of her brief includes challenges to the legal and factual sufficiency.  Thus, we will review the evidence under both standards.

BACKGROUND

A.J. is a single mother. Her children were born in 2018 and 2020. A.J.'s involvement with Appellee, the Texas Department of Family and Protective Services, began in 2021 when she was arrested for driving while intoxicated with one of the children in the vehicle. She was eventually convicted of the offense and placed on community supervision for five years.[3]

A.J. began family-based safety services, and her children were placed with a maternal cousin to avoid removal. Three days later however, the cousin reported she would not be able to care for the children and they were placed in a foster home.

A.J. completed her first family service plan in May 2022. Several months after her release from ISF in October 2022, A.J. provided hair strands on December 13, 2022, and January 24, 2023, which tested positive for cocaine. The caseworker testified A.J.'s main issue was alcohol use and urine tests produced positive results various times during the life of the case.

The Department implemented a second family service plan in March 2023, and A.J. worked her services enough for reunification with her children under a monitored return in October 2023. The caseworker testified the reunification was not without struggles and determined termination was in the children's best interests. A.J. testified

---

[3] In 2020, A.J. was placed on deferred adjudication community supervision for three years for tampering with evidence. Pursuant to the State's motion and amended motion to adjudicate guilt, the trial court amended A.J.'s conditions of community supervision several times. Those amendments included one year in an Intermediate Sanctions Facility (ISF). She completed ISF in October 2022.

she was seeking appointment as possessory conservator to maintain visitation with her children and ultimately be reunited with them.

After presentation of all the evidence, the trial court ruled the Department provided clear and convincing evidence that A.J. engaged in conduct which endangered her children's physical or emotional well-being and failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of her children. The trial court further found termination was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O), (b)(2).

## APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes at least one of the predicate grounds under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2). *See also In re R.J.G.*, 681 S.W.3d 370, 377 (Tex. 2023); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). *See also* § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007.

3

Only one statutory ground is needed to support termination though the trial court must also find that termination is in a child's best interest. *In re K.C.B.*, 280 S.W.3d 888, 894–95 (Tex. App.—Amarillo 2009, pet. denied). In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014). In reviewing a best-interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*, 544 S.W.2d at 371–72.

## STANDARD OF REVIEW

The natural right existing between parents and their child is of constitutional dimensions. *See Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A decree terminating the natural right between a parent and a child "is complete, final, irrevocable and divests for all time that natural right . . . ." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012). Thus, in seeking to permanently sever the parent-child relationship, the trial court must "observe fundamentally fair procedures." *Id.* Consequently, termination proceedings are strictly construed in favor of the parent. *Id.* at 563. Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise

4

surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266 (citing *In re C.H.,* 89 S.W.3d at 25). We must determine whether the evidence is such that a trier of fact could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.,* 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable trier of fact could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not have credited in favor of the finding is so significant that a trier of fact could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

**ISSUE ONE—SECTION 161.001(b)(1)(E)**

A.J. contends the evidence is legally and factually insufficient to support termination of her parental rights under subsection (E). We disagree.

Subsection (E) permits termination when clear and convincing evidence shows that a parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is

5

whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no. pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re M.M.*, 584 S.W.3d 885, 890 (Tex. App.—Amarillo 2019, pet. denied). That is, a voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* (citation omitted). To support a finding of endangerment under subsection (E), the parent's conduct does not necessarily have to be directed at the child nor is the child required to actually suffer injury. *In re M.M.*, 584 S.W.3d at 890 (citing *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (reversing appellate court's holding that father's imprisonment did not endanger the emotional and physical well-being of a child)).

## ANALYSIS

According to A.J.'s caseworker, A.J. did not maintain regular contact with the Department. A.J. claimed she was not receiving text messages or calls to attend drug screens. She also claimed she had gotten a new phone and no longer had her caseworker's number.

The Department became concerned with issues post-reunification and removed the children from A.J. a second time in January 2024, after she tested positive for alcohol

she had consumed in the children's presence. A.J.'s family service plan was adjusted to address the Department's concerns.[4] Some of the concerns were as follows:

- A.J. had not secured an AA sponsor;

- A.J. reported working at Wendy's but a phone call revealed she was no longer employed;

- A.J. obtained other employment but did not consistently provide pay stubs;

- A.J. was not consistent with her drug screens and her no-shows were presumed positives;

- communication with her caseworker was inconsistent and she claimed she was not receiving texts or phone calls and had lost the caseworker's number;

- housing was unstable; she had an apartment but then moved in with her sister which was not suitable for the children; A.J. then moved into her grandmother's two-bedroom house when she passed away; her grandmother did not own the house and had paid rent;

- there were reports the children's bedroom floor had feces on it; and

- A.J. struggled with her sobriety, especially with alcohol.

A.J. testified regarding her struggle with alcohol abuse but after more than two years of involvement with the Department she had not secured a sponsor. She acknowledged she only had two months of stable housing and three months of stable employment and realized the Department required six months of stability. Despite several years of working services, she claimed the Department was only giving her two months "to get everything done."

---

[4] The FSP required A.J. to maintain regular contact with her caseworker, obtain transportation, maintain a drug-free lifestyle, stable housing and employment for six months, attend individual counseling, complete a substance abuse assessment, attend AA and NA meetings, and obtain a sponsor.

A.J. requested appointment as possessory conservator to continue visitation with her children. She could not explain why she had not received some of her caseworker's texts or calls to attend drug screens, but claimed she had gotten a new phone.

Alcohol abuse is one of many forms of endangerment. *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). Although alcohol is not a controlled substance or illegal to consume, A.J.'s continued lapses with alcohol abuse posed a risk of endangerment to her children. *See In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) (holding that while drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to a child can establish a *risk* of harm).

In more than two years of involvement with the Department, A.J. showed an inability to abstain from alcohol. At the time of termination, she remained on community supervision for her conviction for driving while intoxicated with a minor child. She was given several opportunities in lieu of incarceration such as extensions on periods of community supervision or amended conditions. Regardless, she continued to use alcohol even after she obtained a monitored return of her children. Her continuing course of alcohol abuse posed a substantial risk to her children that she might not be able to parent them if community supervision was revoked and she became incarcerated. She did not present any evidence of a support system should she be unable to parent her children. *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) (noting alcohol abuse can affect a parent's life and ability to parent which results in endangering conduct); *In re R.W.*, 129 S.W.3d 732 (Tex. App.—Fort Worth 2004, pet. denied) (holding same).

8

When the caseworker was asked if A.J. had changed her behavior, she testified, "I don't think she has." She elaborated that A.J. had not shown long-term stability or a safe support system for her children. The caseworker concluded A.J. had not completed the services required in the second family service plan and it was in the children's best interests to terminate her parental rights. *See In re U.H.R.*, No. 07-18-00318-CV, 2019 Tex. App. LEXIS 22, at *13 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.) (noting a parent's failure to complete requirements of a family service plan may also be considered in an analysis under subsection (E)).

For almost three years, A.J. was involved with the Department and worked and completed numerous services. Nevertheless, she continued to engage in a voluntary, deliberate, and conscious course of conduct posing a potential risk of danger to her children. Actual injury to the children was not required; rather, they were exposed to the possibility that A.J. could be impaired or imprisoned from her voluntary conduct. *See In re R.M.*, No. 07-12-00412-CV, 2012 Tex. App. LEXIS 10239, at *10 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.). We conclude the evidence was sufficient to support the trial court's finding of termination under subsection (E). Issue one is overruled.[5]

**ISSUE TWO—SECTION 161.001(b)(1)(O)**

Because only one statutory ground is needed to support termination, we need not address A.J.'s sufficiency challenge to termination under subsection (O). Issue two is moot.

---

[5] Because A.J. challenged subsection (E), we need not independently address subsection (D) to satisfy the requirements of *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). *See M.Y. v. Tex. Dep't of Family & Protective Servs.*, No. 03-22-00780-CV, 2023 Tex. App. LEXIS 3671, at *16 n.3 (Tex. App.—Austin May 31, 2023, no pet.) (mem. op.).

## ISSUE THREE—BEST-INTEREST FINDING

A.J. contends the evidence is legally and factually insufficient to support the trial court's best-interest finding. We disagree.

The Department was required to prove by clear and convincing evidence that termination of A.J.'s parental rights was in her children's best interests. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of her parental rights was in the children's best interests can we conclude the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of a child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of a child in a safe environment is also presumed to be in a child's best interest. *See* § 263.307(a). To assess the trial court's best-interest finding, we consider factors enumerated in the non-exhaustive list set forth in section 263.307(b) of the Family Code.

Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371–72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed

10

placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See id.* at 28; *In re C.F.*, 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied). *See also In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

## ANALYSIS

The children had been in the Department's care since April 2022 and A.J. had been involved with the Department since 2021. The final hearing occurred in August 2024. The children were placed in foster care together and were doing well. A.J. had supervised visitation but missed a few due to miscommunication. In-person visits took place in a restaurant or park and there were no reports they did not go well. The children were preparing to start school and were developmentally on track. A.J.'s daughter was scheduled for a hearing test and her son's vision was due to be tested. The caseworker

11

testified the children "fit right in" and are bonded with their foster family. Although a decision to adopt had not been made, the foster parents were available.

A.J. conceded that for almost three years she had not been able to provide the six continuous months of employment or housing stability required by the Department. As a paramount consideration, the children's need for permanence and stability was being satisfied with their foster family. The evidence is sufficient to support the trial court's finding that termination of A.J.'s parental rights was in her children's best interests. Issue two is overruled.

## CONCLUSION

The trial court's *Order of Termination* is affirmed.

Alex Yarbrough
Justice

Parker, J., concurring in the result.